DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Scioto County Common Pleas Court, Juvenile Division, judgment that awarded the Scioto County Children Services (SCCS) permanent custody of John Marshall Beasley, born April 21, 1987. Appellant, Samantha Beasley, the natural mother of the child, assigns the following errors:
FIRST ASSIGNMENT OF ERROR:
"The Trial Court Erred By Granting Permanent Custody Of John Marshall Beasley To The Scioto County Children Services Board As Same Was Against The Manifest Weight Of The Evidence."
SECOND ASSIGNMENT OF ERROR:
"The Trial Court Erred By Terminating The Parental Rights Of Samantha Beasley And Not Extending Long-term Custody For John Marshall Beasley When The Minor Child Met The Requirements For A Planned Permanent Living Arrangement And Such An Arrangement Would Be In The Best Interests Of The Child."
 {¶ 2} In July of 1998, appellant, her daughter Blake, and her son John Marshall Beasley, moved to Scioto County, Ohio. In November of 1998, Daniel, one of appellant's other sons, also moved to Ohio. Because appellant's two sons apparently have some history of sexually abusing each other and/or others[1] before moving to Ohio, appellant attempted to place John outside of her home in a residential sexual offender program.
 {¶ 3} In November of 1998, appellant filed a guardianship action and SCCS first acquired custody of John. In January of 2000, a delinquency charge was filed against John. The complaint alleged that he raped his younger brother, Daniel.
 {¶ 4} On January 2, 2001, the court found John to be a delinquent child. On February 9, 2001, the trial court issued a suspended commitment for John to the Ohio Department of Youth Services and placed him on probation until June 1, 2002. The trial court further awarded SCCS custody of John for placement in a therapeutic foster home.
 {¶ 5} On April 13, 2001, SCCS filed a motion for permanent custody. SCCS asserted that at the time of filing its motion, the child had been in its custody for almost twenty-nine consecutive months. SCCS also claimed that appellant stated that she wanted her child to remain in foster care until he is eighteen and that she would not permit him to return home.
 {¶ 6} On October 24, 2001, and June 27, 2002, the trial court held a hearing to consider SCCS's permanent custody motion. At the hearing, SCCS presented witnesses who testified that they encouraged appellant to allow the child to return to her home, but that appellant continually refused. The witnesses stated that appellant informed them that she would not allow the child to return to her home unless she was given a "written guarantee" that the child would not sexually offend in her home.
 {¶ 7} The evidence further revealed that appellant loves her child and wants to continue a relationship with the child. Nevertheless, appellant would not allow the child to return to her home.
 {¶ 8} On February 3, 2003, the trial court awarded SCCS permanent custody of the child. The trial court noted that SCCS made numerous attempts to reunite appellant with her son, but that all of its attempts have failed, due mainly to appellant's lack of cooperation and lack of effort. The court recalled that at one point, appellant agreed to permanently surrender the child, but on the date scheduled for a hearing on the matter, she changed her mind. The court further noted that appellant refused to participate in any plan to bring the child back home. The court noted that the child wished to return home, but found that appellant "steadfastly refuses to accept him back into the home and steadfastly refuses to participate in any reunification plan whose goal is to return [the child] to the home." The court concluded that appellant, "by her refusal to cooperate with [SCCS] and by her refusal to participate in the reunification efforts of [SCCS], and by her refusal to accept [the child] back into her home, [appellant] has abandoned th[e] child."
 {¶ 9} The trial court determined that the child's best interests would be served by awarding SCCS permanent custody. The court found that the child needs a legally secure placement that cannot be achieved without granting SCCS permanent custody. The court stated that it considered all R.C. 2151.414(D)(1) to (5) factors and all R.C.2151.414(E)(1) to (16) factors. The court noted that appellant's refusal "to cooperate and/or participate in any reunification plan outweighs all of these other factors."
 {¶ 10} The trial court further determined that the child cannot be returned to appellant within a reasonable time, due primarily to appellant's refusal "to make any effort towards reunification." The court found that appellant has demonstrated a lack of commitment to her child by her refusal to act and that appellant has abandoned her child to foster care.
 {¶ 11} The trial court did consider the option of placing the child in a planned permanent living arrangement (PPLA), but found that such a placement would not be appropriate. The court noted that the child will not turn eighteen until April 21, 2005, and that if placed in a PPLA, the child would have been in foster care for over six years. The court stated: "This goes way beyond what this court feels to be an appropriate disposition in this case." Appellant filed a timely notice of appeal.
 I {¶ 12} In her first assignment of error, appellant asserts that the trial court erred by awarding SCCS permanent custody. Appellant argues that the record does not contain clear and convincing evidence to show that: (1) the child could not be returned to appellant's home within a reasonable time; (2) appellant failed to substantially cooperate or participate in a reunification plan; and (3) appellant demonstrated a lack of commitment to the child. We disagree with appellant.
 {¶ 13} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. Santosky v. Kramer (1982),455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599; In re Murray (1990),52 Ohio St.3d 155, 156, 556 N.E.2d 1169. The parent's rights, however, are not absolute. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" In reCunningham (1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (quoting In reR.J.C. (Fla.App. 1974), 300 So.2d 54, 58). Thus, the state may terminate parental rights when the child's best interest demands such termination.
 {¶ 14} R.C. 2151.413 permits a public children services agency that has temporary custody of a child to file a motion requesting permanent custody of the child. In considering a motion filed pursuant to R.C. 2151.413, the trial court must follow the guidelines set forth in R.C. 2151.414.
 {¶ 15} R.C. 2151.414(A)(1) requires a trial court to hold a hearing to consider the motion for permanent custody. The primary purpose of the hearing is to allow the trial court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. See R.C. 2151.414(A)(1).
 {¶ 16} When reviewing a motion for permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:
(A) To provide for the care, protection, and mental and physical development of children * * *;
* * * *
(C) To achieve the foregoing purpose, whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.
R.C. 2151.01.
 {¶ 1} We note that clear and convincing evidence must exist to support a permanent custody award. The Ohio Supreme Court has defined "clear and convincing evidence" as follows:
"The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."
In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23; see, also, State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. In reviewing whether the lower court's decision was based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, 55 Ohio St.3d at 74. If the lower court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. Id.
 {¶ 17} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273, 1276:
"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
 {¶ 18} R.C. 2151.414(B) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that one of the following conditions applies:
(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 19} Pursuant to the plain language of R.C. 2151.414(B)(1)(d), when a child has been in an agency's temporary custody for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time. See In reBillingsley, Putnam App. Nos. 12-02-07 and 12-02-08, 2003-Ohio-344; In reWilliams, Franklin App. No. 02AP-924, 2002-Ohio-7205; In re Dyal, (Aug. 9, 2001), Hocking App. No. 01CA11; In re Decker (Feb. 13, 2001), Athens App. No. 00 CA 42, unreported; In re Fox (Sept. 27, 2000), Wayne App. Nos. 00 CA 38, 00 CA 39, 00 CA 40, 00 CA 41, unreported; In re Moody
(Aug. 7, 2000), Athens App. No. 99 CA 63, unreported; In re Moody (Aug. 7, 2000), Athens App. No. 99 CA 62, unreported.[2] See, generally, Inre Lusk (Nov. 27, 2000), Butler App. No. CA2000-07-139, unreported; In reBarker (June 16, 2000), Champaign App. No. 20001, unreported; In reRodgers (June 5, 2000), Preble App. No. CA99-08-017, unreported. Thus, when considering a permanent custody motion brought pursuant to R.C.2151.414(B)(1)(d), the only other consideration becomes the best interests of the child. A trial court need not conduct an R.C.2151.414(B)(1)(a) analysis of whether the child cannot or should not be placed with either parent within a reasonable time. Dyal, supra.
 {¶ 20} R.C. 2151.414(D) requires the trial court to consider specific factors in determining whether the child's best interests would be served by granting the motion for permanent custody. The factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.[3]
 {¶ 21} In the case at bar, ample competent and credible evidence exists to support the trial court's decision to award SCCS permanent custody of appellant's child. The evidence reveals that, as of the date of the permanent custody hearing, the child had been in SCCS's temporary custody for at least twelve of the prior twenty-two months. See R.C.2151.414(B)(1)(d). The child was first removed from the home in November of 1998, and the trial court found that the child had been in SCCS's custody since March of 1999.[4] For purposes of R.C. 2151.414(B)(1)(d), a child is considered to enter "the temporary custody of an agency on the earlier of the date the child is adjudicated [neglected, dependent, abused, or delinquent] * * * or the date that is sixty days after the removal of the child from the home." R.C. 2151.414(B)(1). The child was adjudicated delinquent on January 2, 2001. Because May of 1999 (sixty days after the child was removed from the home) is earlier than the date the child was adjudicated delinquent, the child had thus been, at the time of the permanent custody hearing, in SCCS's temporary custody, for purposes of R.C. 2151.414(B)(1)(d), for approximately twenty-five months. Because the child had been in SCCS's temporary custody for at least twelve months of a twenty-two month period, the trial court's permanent custody award is justified upon a finding that permanent custody would serve the child's best interests. Thus, the trial court was not required, as appellant asserts, to find that the child could not be placed with appellant within a reasonable time. See, e.g., Dyal, supra.
 {¶ 22} We also believe that the record contains ample, competent and credible evidence to support the trial court's conclusion that the best interests of the child would be served by awarding SCCS permanent custody. The evidence reveals that the child has some history of committing sex offenses against other children and that appellant adamantly refuses to allow the child to return to her home, absent a "written guarantee" that he will not re-offend. While the evidence shows that appellant loves her child and that the child would like to return home, appellant would not allow the child to return home. Moreover, the child has been in SCCS's custody for over two years.
 {¶ 23} The trial court determined that the child needs a legally secure permanent placement. Thus, because appellant refuses to allow the child to return home, a legally secure permanent placement cannot be achieved without a grant of permanent custody to SCCS. We therefore agree with the trial court that the child's best interests would be served by awarding SCCS permanent custody.
 {¶ 24} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II {¶ 25} In her second assignment of error, appellant asserts that the trial court erred by failing to determine that a planned permanent living arrangement, rather than permanent custody, would serve the child's best interests. We disagree with appellant.
 {¶ 26} A reviewing court should accord a trial court's discretion in custody matters the utmost respect, given the nature of the proceeding and the impact the court's decision will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. See generally Miller v. Miller
(1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (citing Trickey v. Trickey
(1952), 158 Ohio St. 9, 13, 106 N.E.2d 772).
 {¶ 27} Pursuant to 2151.415(C)(1), a child may be placed in a PPLA if the trial court finds, by clear and convincing evidence, that it is in the best interest of the child and that one of the following applies:
(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care.
(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with [R.C. 2151.414(D)], and the child retains a significant and positive relationship with a parent or relative.
(c) The child is sixteen years of age or older, has been counseled on the permanent placement options available to the child, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing the child for independent living.
 {¶ 28} In the case at bar, we do not believe that the trial court erred by determining that a PPLA would fail to serve the child's best interests. Some evidence exists to show that the child is unable to function in a family-like setting, due to his apparent history of sexually offending other children. However, simply because some evidence exists to satisfy the requirements of R.C. 2151.415(C)(1) does not mean that a trial court must place the child in a PPLA. Rather, the trial court is vested with discretion to determine whether permanent custody or a PPLA would serve the child's best interests. See In re Clever, Montgomery App. Nos. 19298 and 19299, 2002-Ohio-5588 (stating that although some evidence existed that placement in a PPLA would serve the children's best interest, the trial court did not abuse its discretion by awarding permanent custody); see, also, In re Muldrew, Montgomery App. No. 19469, 2002-Ohio-7288 (concluding that the trial court abused its discretion by placing the child in a PPLA, as opposed to awarding permanent custody, when the child's guardian stated that she did not want custody of the child, but did wish to maintain a relationship). We determined in our discussion of appellant's first assignment of error that the trial court appropriately decided that the child's best interests would be served by granting SCCS permanent custody. We do not believe that the trial court abused its discretion by concluding that placing the child in a PPLA would fail to serve the child's best interest.
 {¶ 29} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Evans, P.J.: Concurs in Judgment Opinion.
Harhsa, J.: Concurs in Judgment Only.
[1] The record does not fully reveal the nature of the sexual activity that appellant claims her sons committed.
[2] {¶ a} In Moody, we noted:
{¶ b} "On March 18, 1999, Am.Sub.H.B. No. 484 (HB 484) became effective and amended R.C. 2151.414. Prior to this amendment, a trial court could grant permanent custody of a child who had not been abandoned or orphaned only if doing so was in the best interest of the child and the trial court found that the child could not be placed with the parent within a reasonable time or should not be placed with the parent. After HB 484's amendments, a trial court may grant permanent custody of a child who has not been abandoned or orphaned to an agency if doing so is in the best interest of the child and the child has been in the temporary custody of one or more public children services agencies for at least twelve months of a twenty-two month period ending on or after March 18, 1999. See R.C. 2151.414(B)(1)(d). If the child has not been in the agency's custody for the requisite period of time (and has not been abandoned or orphaned), the trial court may grant permanent custody to the agency only if the child could not be placed with the parent within a reasonable time or should not be placed with the parent. R.C.2151.414(B)(1)(a). Thus, the trial court is required to determine whether the child could not be placed with the parent within a reasonable time or should not be placed with the parent only if the child is not abandoned, orphaned, or has not been in the temporary custody of one or more public children services agencies for at least twelve months of a twenty-two month period ending on or after March 18, 1999. R.C. 2151.414(B)(1); R.C. 2151.414(B)(2)."
[3] {¶ a} R.C. 2151.414(E)(7) to (11) provide as follows:
{¶ b} (7) The parent has been convicted of or pleaded guilty to one of the following:
{¶ c} (a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
{¶ d} (b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
{¶ e} (c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
{¶ f} (d) An offense under section 2907.02, 2907.03, 2907.04,2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
{¶ g} (e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
{¶ h} (8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
{¶ i} (9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section2151.412 [2151.41.2] of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
{¶ j} (10) The parent has abandoned the child.
{¶ k} (11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 [2151.35.3] or2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child.
[4] The trial court did not provide a specific date.